## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 12-23644-CIV-GOODMAN

### [CONSENT CASE]

EDDIE CLARENCE FORD,

      Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

      Defendant.

_____/

### <u>ORDER</u>

This Cause is before the Court on Plaintiff Eddie Clarence Ford ("Ford") and

Defendant Carolyn W. Colvin's, the Commissioner of the Social Security

Administration (the "Commissioner"), cross-motions for summary judgment.

An Administrative Law Judge ("ALJ") determined that Ford was not disabled.

Ford seeks judicial review of that decision. Ford argues that the ALJ erred because he

mechanically applied Medical-Vocational Guidelines (the "Grids") Rule 202.10 to the

54-year old Ford to find him not disabled. Ford argues that if the ALJ had taken into

account all factors (as he should have), then he would have applied the Grids rule for

claimants over 55 and Ford would have been found disabled.

For the reasons set out below, the Court affirms the ALJ's decision on two independent grounds. First,  the ALJ did not mechanically apply the Grids to Ford. Second, even if the ALJ did mechanically apply the Grids, Ford has not made the required proffer of substantial credible evidence to the Court that his ability to adapt to a new work environment is less than the established Grids level. Accordingly, the Court **denies** Ford's summary judgment motion and **grants** the Commissioner's summary judgment motion.

I.      BACKGROUND

   A.  Procedural History

Ford applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on July 14, 2008. (R. 98, 102).[1] His SSI application was initially denied and was denied again on reconsideration. (R. 48-55, 57-62). He then requested for an ALJ to review his case. (R. 64-65). On December 14, 2010, the ALJ held a hearing on Ford's SSI application. (R. 30-41).

On January 11, 2011, the ALJ issued his decision. (R. 15-29). In sum, the ALJ found that although Ford is unable to perform any of his past relevant work, he is still capable of performing a full range of light work, such as working as a car wash attendant or finisher. (R. 21-25). In reaching his decision, the ALJ undertook the five-step sequential evaluation process for determining whether an individual is disabled.

---

[1]      References to "R. _" are to pages of the transcript of the administrative record.

The ALJ also took into account Ford's complaints of pain, the objective medical evidence, the vocational expert's testimony, and Ford's age, education, and work experience.

Ford requested that the Appeals Council review the ALJ's unfavorable decision. (R. 1-4). The Appeals Council declined Ford's request, making the ALJ's written decision the Commissioner's final decision.

Ford filed this action seeking judicial review of the ALJ's decision. [ECF No. 1]. The Commissioner filed her answer on May 3, 2013. [ECF No. 20]. Ford filed his summary judgment motion on July 11, 2013. [ECF No. 30]. The Commissioner filed her summary judgment motion, which doubled as both a summary judgment motion and a response to Ford's motion, on August 7, 2013. [ECF No. 31]. Ford did not file a reply to the Commissioner's response, and the time to do so has passed.

**B. <u>Facts</u>**

1. *General Background*

Ford claims that his disability began on January 1, 2001 as a result of arthritis, lower back pain, and high blood pressure. (R. 98, 137). However, he did not apply for SSI until 2008, when he was almost 52. (R. 129). He was 54 years old when the ALJ issued his decision. Although Ford was unemployed from 2004 to 2006, he did not definitively stop working until April 2008. (R. 133). His past employment includes work as a store laborer, a landscape laborer, and a construction laborer. (R. 24, 38-39, 134).

Ford testified that he could lift 15-20 pounds and stand for about an hour-and-a-half before he needed to sit down. (R. 35). He also testified that he can drive, and while at home he washed the dishes, cleaned the bathroom on occasion, and swept. (R. 37-48).

    2.   *Medical Evidence*

After he submitted his application, Ford was prescribed a cane in August 2008. (R. 297-98). In September 2008, Ford was examined by Dr. Afzal Khan, M.D. (R. 189-91). Ford reported that he had a history of blood pressure and he complained of arthritis in his knees, hips, elbows, hands, and lower back. (R. 189). Dr. Khan first noted that Ford was obese and taking some cholesterol and blood pressure medication. Dr. Khan then examined Ford and found no gross joint swelling, except for some mild swelling in Ford's knees, and found that Ford had a full range of normal motion in his joints. (R. 189-191). Dr. Khan also had Ford's back and knees x-rayed. (R. 190). Those x-rays showed that Ford's back and knees were normal. (R. 190).

In October 2008, Bettye Stanley, D.O., a state agency physician, reviewed Ford's file. (R. 193-200). Dr. Stanley opined that Ford's allegations were disproportionate to the evidence and that he could perform medium work. (*Id.*). In March 2009, James Andriole, D.O., another state agency physician, agreed with Dr. Stanley's findings that Ford could perform medium work. (R. 201-08).

In August 2010, Dr. Chad Brodt completed a check-box form and indicated that Ford had work-preclusive limitations. (R. 293-96). There are no treatment notes in the record from Dr. Brodt and it is not clear that Dr. Brodt ever examined Ford.

## II.   APPLICABLE LEGAL PRINCIPLES

### A.   <u>Standard of Review</u>

In reviewing the Commissioner's final decision, the court's role is limited to determining whether there is substantial evidence in the record to support the decision and whether the Commissioner correctly applied the appropriate legal standards. 42 U.S.C. § 405(g); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

The Commissioner's decision must be affirmed if it is supported by substantial evidence in the record. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is more than a scintilla, but less than a preponderance; "it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McRoberts,* 841 F.2d at 1080 (internal citations and quotations omitted). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account favorable and unfavorable evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citation omitted). The court, however, must not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner's]." *Bloodsworth*, 703 F.2d at 1239

(internal citations omitted). Thus, "[e]ven if [the court] find[s] that the evidence preponderates against the [Commissioner's] decision [the court] must affirm if the decision is supported by substantial evidence." *Id*.

Unlike the deferential standard of review to the Commissioner's findings of fact, "[n]o presumption of validity attaches to the [Commissioner's] determination of the proper legal standards to be applied in evaluating claims." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Wiggins*, 679 F.2d at 1389). The Commissioner's "[f]ailure to apply the correct legal standards or to provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal." *Wiggins*, 679 F.2d at 1389.

### B.  The Five-Step Sequential Evaluation

The Commissioner first determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner must determine whether the plaintiff suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the Commissioner must determine if the plaintiff's impairments meet or equal a listed impairment, and, if so, then the plaintiff is found disabled. 20 C.F.R. §§ 404, App. 1, 404.1520(d), 416.920(d). At step four, the Commissioner must determine whether the plaintiff's impairments prevent the plaintiff from performing his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the answer is yes, then a prima facie

disability case is established. The burden shifts to the Commissioner to show, at step five, that there is other work that the plaintiff can perform. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); 20 C.F.R. § 404.1560(c). The Commissioner then determines if the plaintiff is capable of performing other work. 20 C.F.R. §§ 404.1520(g), 416.920(g).

## III.    ANALYSIS

Ford was 54 years and 4 months old at the time of the ALJ's decision. His main argument is that the ALJ mechanically applied Grids rule 202.10 to find that Ford was not disabled. Ford argues that if the ALJ had not mechanically applied the Grids rule, then he would have treated Ford as being 55 and, therefore, rule 202.10 would not have applied and Ford would have been found disabled.

### A.  Legal Background: The Grids and the *Reeves* Proffer

The Grids differentiate between a "person closely approaching advanced age" -- a person between the ages of 50 and 54 -- and "a person of advanced age" -- a person 55 years or older. 20 C.F.R. § 404.1563(d), (e). "The grids are based on the claimant's residual functional capacity, age, education and work experience, and in cases where they apply, they direct a conclusion on the issue of whether the claimant is capable of performing substantial gainful activity in the national economy." *Patterson v. Bowen*, 799 F.2d 1455, 1458 (11th Cir. 1986). "In attempting to meet its burden, the Commissioner may rely upon the grids to establish that other work exists in the national economy that the claimant is able to perform." *Miller v. Comm'r of Soc. Sec.*, 241 F. App'x 631, 634 (11th

Cir. 2007). In other words, the Grids may point the ALJ to a finding of disability or non-disability based, in substantial part, on the claimant's age.

In this Circuit, the Commissioner may not apply the Grids "in a mechanistic fashion on the basis of a claimant's age, in order to establish conclusively a claimant's adaptability to a new work environment." *Walker*, 826 F.2d at 1103. Rather, while the Commissioner may rely upon the applicable Grids for the claimant's age as evidence of adaptability to a new work environment, the claimant may then proffer "substantial credible evidence that his ability to adapt is less than the level established under the grids for persons his age." *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984). This is known as a *Reeves* proffer. If the claimant presents such evidence, then the Commissioner "cannot rely on the age factor of the grids and must instead establish the claimant's ability to adapt to a new work environment by independent evidence." *Miller*, 241 F. App'x at 634; *Reeves,* 734 F.2d at 525. In such a case, the court must remand the case to the Commissioner for reconsideration of the issue. *Id.*

If the claimant fails to make a *Reeves* proffer to the court, then "there would be no need to remand" and the ALJ's mechanical application of the Grids would be harmless error. *Patterson*, 799 F.2d at 1459; *Miller*, 241 F. App'x at 636; *Hutchinson v. Bowen*, 787 F.2d 1461, 1465 (11th Cir. 1986) (internal citation omitted). Moreover, if the ALJ does not rely exclusively on the Grids in finding the claimant disabled, then the

question as to whether the claimant should have been characterized differently for purposes of the Grids is inconsequential. *Miller*, 241 F. App'x at 636.

An individual in a borderline situation is not automatically deemed to be in the next higher age category. Instead, a borderline age (such as being 54 years and 4 months old) scenario gives the ALJ discretion to use the next category. *See* 20 C.F.R. §§ 404.1563(b), 416.963(b).

**B.  The ALJ Did Not Exclusively Rely on The Grids**

Contrary to Ford's assertions, the ALJ did not rely exclusively on the Grids in determining Ford was not disabled. Rather, the ALJ considered Ford's complaints of pain, the objective medical evidence, the testimony of a vocational expert, and Ford's age, education, and work experience.

First, the ALJ found that Ford's complaints of persistent and debilitating joint and arthritis pain were not supported by the medical evidence. (R. 21-23). Ford does not challenge this determination. Indeed, the record reflects that Ford has never been hospitalized and has only been prescribed Tylenol, ibuprofen, and a cane for his joint pain. (R. 139).

Second, in addition to reviewing the Grids, the ALJ found that although Ford could not perform his past relevant work, he was still capable of performing a full range of light work. (R. 15-25). In that regard, the ALJ relied on the vocational expert's testimony to establish that Ford can perform other work.

Consequently, the Court finds that: (1) the ALJ did not exclusively rely on, or mechanically apply, the Grids to Ford; and (2) the ALJ's findings are supported by substantial evidence. Accordingly, the Court rejects Ford's argument that the ALJ mechanically applied the Grids. *See Miller*, 241 F. App'x at 635 (explaining that because the ALJ relied on vocational expert testimony and not exclusively on the grids, "a determination of whether Miller was a person of advanced age or closely approaching advanced age was not necessary").

### C.  **Ford Did Not Make a *Reeves* Proffer**

Even if the Commissioner mechanically applied the Grids, it is nonetheless harmless error. In order to compel a remand, Ford must proffer substantial credible evidence to **this Court** that his "ability to adapt is less than the level established under the grids for persons of his age" and, therefore, the higher age Grids should be used. *See Miller*, 241 F. App'x at 634; Hearings, Appeals, and Litigation Law Manual (HALLEX) II-5-3-2, 2003 WL 25498826. Without showing additional adversities justifying use of the higher age category, Ford's chronological age is used, even if the time period is short by only a few days. Moreover, the ALJ is not required to specifically discuss the possibility of the borderline situation. *Bowie v. Comm.*, 539 F.3d 395, 398-99 (6th Cir. 2008).

Here, Ford has failed to make the necessary *Reeves* proffer. Although Ford asks this Court to remand the case in order to make a *Reeves* proffer, the opportunity to do so was **before this Court**, and *not after the case has been remanded*. *Miller*, 241 F. App'x at 636

(affirming district court because claimant failed to make a *Reeves* proffer before the district court or the appellate court). Thus, because Ford failed to make the required proffer, there is no need to remand.

### D. *Res Judicata*

Ford's assertion that he will be precluded from filing a second application by *res judicata* is incorrect. The Court is limited to considering the time period up to the ALJ's decision. *See* 20 C.F.R. §§ 404.620(a), 416.330. A second SSI application is not precluded if it concerns a completely different time period. *See McKinzie v. Comm'r of Soc. Sec.*, 362 F. App'x 71, 73 (11th Cir. 2010). Subsequent claims that Ford is disabled after the ALJ's decision would therefore involve a completely different time period. Therefore, Ford would be able to file a second SSI application, presumably after he has turned 55 years old and has reached the status of a "person of advanced age."

IV.    **CONCLUSION**

For the reasons set forth above, the Court **denies** Ford's summary judgment motion, **grants** the Commissioner's summary judgment motion, and orders the case **closed**.

**DONE and ORDERED** in Chambers, in Miami, Florida, May 27, 2014.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All counsels of record

12